07cvIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | 07 CR 227 |
| v. | ) | |
| | ) | Judge George W. Lindberg |
| JOHN TOMKINS | ) | |

**MEMORANDUM OPINION AND ORDER**

The government charged defendant with various crimes, in a fifteen-count indictment filed on September 18, 2007. Before the Court are defendant's pretrial motions.

**I.    Factual Background**

The following facts are alleged in the indictment. Between January 2005 and September 2005, defendant bought common stock and call option contracts of 3Com Corporation. Between May 23, 2005 and October 25, 2005, defendant mailed letters to senior employees of several investment companies, threatening the recipients with violence if the price of 3Com's stock did not reach $6.66 by October 31, 2005.

In addition, defendant bought common stock of Navarre Corporation between January and December 2006, and bought Navarre call option contracts between February 2006 and March 2007. Defendant mailed letters to individuals associated with various investment companies, in which he threatened the recipients with violence if Navarre's stock did not reach defendant's target price by certain dates.

Defendant also mailed a letter to Navarre's chief executive officer on March 13, 2006, directing him to increase the price of Navarre's stock to $6.66 within sixty days by, among other actions, disseminating false information that the CEO was "taking the company private." The

letter threatened the CEO with violence if Navarre's stock price did not reach the target.

On June 9, 2006, defendant mailed letters to three individuals to whom he had previously sent threatening letters. The June 9 letters warned the recipients that "times up," and demanded that the price of Navarre's stock increase each day between June 13 and June 17, 2006. The letters also threatened to "ship a package" to targets such as relatives, friends, or neighbors, each day that the Navarre stock price did not "end green."

On January 26, 2007, defendant mailed packages to two individuals associated with investment companies. Each package contained a pipe bomb and a letter stating that "[t]he only reason you are still alive is because I did not attach one wire," and warning that "if you decide you want to keep the people around you safe, you will do as I say." The letters demanded "a rally in the stock price" of Navarre on certain dates, and specified target closing prices.

None of the recipients of the letters complied with defendant's demands, and no market activity resulted from his scheme.

The indictment charges defendant with ten counts of securities fraud, under 15 U.S.C. § 78j(b), 18 U.S.C. § 2, and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. 240.10b-5. The indictment also charges defendant with two counts of mailing threatening communications, in violation of 18 U.S.C. § 876; two counts of possessing an unregistered destructive device, in violation of 26 U.S.C. § 5861(d); and possessing a destructive device in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c).

Before the Court is defendant's motion to dismiss the securities fraud counts of the indictment (Counts 1 through 10), his motion to suppress certain evidence, and four other pretrial motions.

**II.	Motion to Dismiss**

Defendant moves to dismiss the first ten counts of the indictment, which charge him with securities fraud, on the basis that these counts fail to state an offense. Defendant is charged with violating Section 10(b) of the Securities Exchange Act, which provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, . . .–
> . . . .
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5 states, in pertinent part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails . . .,
> (a)	To employ any device, scheme, or artifice to defraud,
> . . . .
> (c)	To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

An indictment must allege facts which, if proven, constitute the crime charged. See United States v. Gimbel, 830 F.2d 621, 624 (7th Cir. 1987). Defendant argues that the charged conduct does not constitute a violation of securities fraud laws because there are no allegations that defendant misled any stock market investors, or that there was any market activity based on defendant's misrepresentations. The government responds that defendant's conduct, combined with his intent to manipulate stock prices, is sufficient to violate Rule 10b-5, even though there was no actual market activity.

The Court starts with a basic principle of statutory construction, that "[g]enerally, courts strictly construe criminal statutes against the government and in the defendant's favor." United States v. Bhutani, 266 F.3d 661, 666 (7th Cir. 2001). When used in connection with securities markets, the word "manipulative" is "virtually a term of art," and "connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 199 (1976). Market manipulation generally refers to practices "such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 476 (1977). The Supreme Court has cautioned that Section 10(b) "must not be construed so broadly as to convert every common-law fraud that happens to involve securities into a violation of § 10(b)." S.E.C. v. Zandford, 535 U.S. 813, 820 (2002).

Neither the government nor defendant cites any case that is factually similar to this one. For that reason, most of the authority cited by the parties provides little guidance in evaluating the facts presented here. For example, the parties' debate over cases such as Markowski v. S.E.C., 274 F.3d 525 (D.C. Cir. 2001), and GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189 (3rd Cir. 2001), is unhelpful, as both of those cases involved actual market activity.

Although United States v. Finnerty, 533 F.3d 143 (2d Cir. 2008), cited by defendant, also presents different facts than are presented here, it is instructive. In Finnerty, the defendant, a New York Stock Exchange specialist, was charged with securities fraud[1] under Section 10(b) and

---

[1] On appeal, the government abandoned any claim of market manipulation, and proceeded only on its claim of deceptive conduct. Finnerty, 533 F.3d at 148.

4

Rule 10b-5, for "interpositioning."[2] See Finnerty, 533 F.3d at 145-46. The Second Circuit affirmed the district court's judgment of acquittal, on the basis that the government offered no evidence that the defendant had conveyed a misleading impression to investors. Id. at 148-49. As the court stated: "The government has identified no way in which Finnerty communicated anything to his customers, let alone anything false." Id. Nor had the government attributed anything to Finnerty "that deceived the public or affected the price of any stock: no material misrepresentation, no omission, no breach of a duty to disclose, and no creation of a false appearance of fact by any means." Id. at 151. The court concluded that the government had undertaken to prove "no more than garden variety conversion." Id. at 149.

The Finnerty court's conclusion that the defendant's conduct did not violate the securities laws because it did not involve the communication of deceptive information to investors suggests that defendant's conduct here would similarly not support a prosecution for securities fraud. In this case, no communications were made to investors, and no action was taken in the market to manipulate stock prices.

The government argues that defendant's scheme was designed to manipulate the market but was simply unsuccessful, and analogizes to mail and wire fraud cases to support its contention that such a scheme can support a prosecution. This argument is misplaced. In this case, no activity in the market occurred, whether the means were successful or unsuccessful. In

---

[2] Buyers and sellers of a security traded on the New York Stock Exchange must present their bids to buy and offers to sell to the Specialist Firm assigned to that security. Ordinarily, the specialists match the orders of the buyers and sellers to timely execute the trades at the best available price. "Interpositioning" occurs when a specialist prevents the normal trade between matching public orders, and instead takes a profit on the spread between the bid price and the ask price of customers' orders. See In re NYSE Specialists Sec. Litig., 503 F.3d 89, 92-93 (2d Cir. 2007).

the mail fraud context, this would be more akin to a would-be defrauder placing a fraudulent document in a stamped envelope and then neglecting to mail it.

Here, while defendant may have wanted to manipulate the market through third parties, no information of any kind was actually communicated to investors, and no market activity of any kind actually took place. The Court concludes that the government's attempt to expand 15 U.S.C. § 78j(b) and Rule 10b-5 to encompass defendant's alleged conduct is unwarranted. Although defendant may well have committed other violations, the facts as alleged do not support a prosecution for violations of 15 U.S.C. § 78j(b) and Rule 10b-5. Defendant's motion to dismiss Counts 1 through 10 of the indictment is granted.

**III.    Motion to Suppress**

On April 24, 2007, Magistrate Judge Scoles, in the Northern District of Iowa, issued a warrant for the search of defendant's home at 2067 Grant Street, Dubuque, Iowa. Magistrate Judge Scoles also issued a warrant for the search of two storage units at Penn Place Apartments in Dubuque. Both of these warrants were executed on April 25, 2007. On April 25, 2007, Magistrate Judge Scoles issued a warrant for the search of a locker and two tool chests located at defendant's workplace; the warrant was executed the same day. Defendant moves to suppress all of the evidence seized pursuant to these three warrants.

The government states that it does not intend to rely on any cameras, photo memory sticks, or packets of photographs seized at defendant's house, or to introduce any evidence seized from defendant's tool chests. Accordingly, the portion of the motion to suppress relating to these items is moot.

Defendant argues that evidence seized during the search of his home and storage units

should be suppressed because the search warrants for those locations were impermissible general warrants. At the time the search warrant for defendant's home was executed, defendant shared the home with his wife and three daughters. In addition, defendant kept documents in the home related to his position of union secretary/treasurer. Defendant contends that because the warrants authorized the seizure of such things as "any and all financial documents," "any and all postal receipts," "any and all telecommunications records," and "any and all computers . . . and electronic storage media," and "any and all cameras, memory sticks, or photographs,"[3] the warrants were impermissible general warrants.

The Fourth Amendment requires a search warrant to describe with particularity the things to be seized. U.S. Const. amend. IV. However, a search warrant "need not be elaborately detailed." Russell v. Harms, 397 F.3d 458, 464 (7th Cir. 2005). Rather, the officers executing the warrant need only to "be able to identify the things to be seized with reasonable certainty and . . . the warrant description must be as particular as circumstances permit." United States v. Jones, 54 F.3d 1285, 1290 (7th Cir. 1995). "If detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized." United States v. Hall, 142 F.3d 988, 996 (7th Cir. 1998).

The Court finds that the search warrants for defendant's home and storage units were overbroad in one limited respect: they failed to impose a time limitation for the financial records, postal receipts, and telecommunications records to be seized. Although the government argues that time limitations as to the telecommunications records are implied by the supporting

---

[3] The lists of items to be seized under the search warrants for defendant's home and storage units are nearly identical.

affidavits to be the time period relevant to the complaint, there is no evidence that the affidavits were incorporated into, or attached to, the warrants. The Court also finds unpersuasive the government's argument that the time period was limited as a practical matter because people typically do not retain telephone records for extended periods of time. Since the government could have limited its request for these categories of items to a period of time more closely related to the events at issue in this case, the failure to do so rendered the warrants overbroad as to those categories.

The Court finds that the remainder of the warrants satisfies the Fourth Amendment's particularity requirement, however, and that the lack of particularity discussed above did not transform the warrants into impermissible general warrants. The lists attached to the warrants are over three single-spaced pages long, and identify numerous detailed categories of evidence. These warrants were supported by lengthy and thorough affidavits that incorporated the criminal complaint. The items listed in the warrants clearly related to the matters detailed in the affidavit; for example, the broad category of financial documents sought could show a financial motive for defendant's crimes, while defendant's cellular telephone records could show defendant's general location at the times calls were made. The categories to which defendant objects are properly described with generic language, since given the broad scope of defendant's alleged scheme, it was not possible to particularize these items in greater detail, other than to limit the financial and telecommunications records and postal receipts by time period.

To the extent that any items were not described in the search warrants with sufficient particularity, the Court finds that the searches of defendant's home and storage units pursuant to the warrants were nevertheless valid under the good faith exception to the exclusionary rule. See

U.S. v. Leon, 468 U.S. 897, 926 (1984). As the Supreme Court recently observed: "Our cases establish that . . . suppression is not an automatic consequence of a Fourth Amendment violation. Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." Herring v. U.S., 129 S. Ct. 695, 698 (2009). "Indeed, exclusion 'has always been our last resort, not our first impulse.'" Id. at 700 (quoting Hudson v. Michigan, 547 U.S. 586, 591 (2006)).

An officer's decision to obtain a search warrant is prima facie evidence that he or she acted in good faith. See U.S. v. Mykytiuk, 402 F.3d 773, 777 (7th Cir. 2005). A defendant can rebut this presumption of good faith by showing that: (1) the judge who issued the warrant abandoned his role as a neutral and detached arbiter, (2) the officers were dishonest or reckless in preparing the supporting affidavit, or (3) the affidavit was so lacking in probable cause that no officer could have relied on it. Id. That is, the defendant must show that "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23.

Defendant argues that the magistrate judge who issued the search warrants was not neutral and detached, as evidenced by the times stamped on the warrants, which indicate that the magistrate judge signed them in quick succession. Defendant argues that this timing indicates that the magistrate judge simply rubber-stamped the government's requests without first reading the supporting material, and requests a hearing on the issue. The Court finds that the timing of how the magistrate judge signed the warrants, without more, is unrelated to the issue of how thoroughly the magistrate judge reviewed the supporting materials. Therefore, no hearing on the issue is warranted.

9

The Court finds that defendant has not rebutted the presumption that the agents acted in good faith. The warrants issued in this case cannot be viewed as so plainly deficient that a reasonably well-trained officer would have known that they lacked particularity. Even if the search warrants lacked particularity, the agents were entitled to rely on them.

Defendant also argues that the search warrant for his home was executed unlawfully, because the government lacked probable cause to seize some of the items. During the search of the home, agents seized a four-drawer file cabinet and all of its contents, which included records of union membership and political activities. Defendant contends that the agents carried out their search in violation of his constitutional rights, because they failed to make an effort to distinguish between these documents, and documents which they could legitimately seize under the search warrant. Defendant urges the Court to suppress all evidence seized from the home, based on this violation.

It appears that the seizure of some of the union-related documents contained in the filing cabinet exceeded the scope of the warrant. However, the Court does not agree that the appropriate remedy is to suppress all evidence seized from defendant's home. Blanket suppression of evidence is not warranted unless the searching officers flagrantly disregarded the terms of the warrant. See U.S. v. Uzenski, 434 F.3d 690, 706 (4th Cir. 2006). Where officers seize items outside the scope of the warrant without exceeding the scope of the warrant in the places searched, "there is certainly no requirement that lawfully seized evidence be suppressed as well." Waller v. Georgia, 467 U.S. 39, 43 n.3 (1984). Here, the search warrant authorized the search of the filing cabinet for financial documents and other records, and as a practical matter given the size of the cabinet, it was reasonable for the agents to search it off-site.

Defendant next argues that the warrant for the search of the storage units was not supported by probable cause. The affidavit submitted in support of that search warrant stated that defendant's bank records revealed monthly payments of $200.00 to Penn Place Apartments, and that the checks written to Penn Place Apartments had "storage" listed in the memo section. In addition, when an officer drove by that property on April 18, 2007, he observed a number of attached garages. Many of the garages were open, revealing small work spaces with work benches, tools, equipment, and supplies; the officer stated that none of the garages appeared to be suitable for storing vehicles. On April 23, 2007, Dubuque police verified through a Penn Place Apartments employee that defendant was renting units 113 and 114.

In support of his argument that probable cause was lacking, defendant states that he does not believe that the checks had "storage" written in the memo section. He also notes that the affidavit did not state that the checks were written within the time relevant to the offenses alleged in the complaint. Defendant further states that he observed that a majority of the garages at Penn Place Apartments were used for parking cars. Finally, defendant argues that the information verifying his rental of the units was unreliable.

When a search is authorized by a warrant, the Court gives "great deference" to the conclusion of the issuing judge that probable cause was established. See U.S. v. Garcia, 528 F.3d 481, 485 (7th Cir.), cert. denied, 129 S. Ct. 422 (2008). The Court defers to the magistrate judge's decision, as long as there is "substantial evidence in the record" to support his probable cause determination. U.S. v. Curry, 538 F.3d 718, 729 (7th Cir. 2008).

The Court finds that there is sufficient evidence in the record to support the magistrate judge's determination in this case. An employee of Penn Place Apartments verified to police that

11

defendant was renting the units, and this information was consistent with defendant's bank records. Moreover, it is not significant that the dates of the checks were not provided in the affidavit, because the government stated that it had confirmed that defendant was renting the units as of the day before the government applied for the search warrant. Finally, the dispute over whether a majority of the units were used for storing vehicles or not is also insignificant, since they clearly can be used for storing other things as well. The Court finds that the affidavit and the allegations in the complaint regarding defendant's scheme adequately established probable cause to search the storage units.

Finally, defendant argues that all of the evidence seized pursuant to the search warrants should be suppressed because the agents violated Federal Rule of Criminal Procedure 41(f)(1) when they executed the search warrant at defendant's house. Rule 41(f)(1)(C) provides:

> The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property.

Defendant contends that when the officers arrived at the home, they only briefly showed a copy of the warrant to his wife, but took it back before she had an opportunity to read it. According to defendant, the officers left a copy of the search warrant, without attachments, at the house after they completed the search. The government disputes these facts, claiming that the agents reviewed the warrant with defendant's wife.

Defendant also contends that the officers violated Rule 41(f)(1)(D), which provides: "The officer executing the warrant must promptly return it – together with a copy of the inventory – to the magistrate judge designated on the warrant." According to defendant, the agents did not

submit a sufficiently detailed inventory of the items seized from defendant's house.  Although the government filed returns with the magistrate judge, defendant contends that the specific paper and digital documents should have been itemized.

The Court finds that even if defendant's version of the events is accurate, exclusion of the evidence is not justified.  The Seventh Circuit has held that "violations of federal rules do not justify the exclusion of evidence that has been seized on the basis of probable cause and with advance judicial approval," because allowing a defendant to go free based on a violation of Rule 41 would be "wildly out of proportion to the wrong."  U.S. v. Berkos, 543 F.3d 392, 396 (7th Cir. 2008).  As the court noted in United States v. Hornick, 815 F.2d 1156, 1158 (7th Cir. 1987), "it is difficult to anticipate any violation of Rule 41, short of a defect that also offends the Warrant Clause of the fourth amendment, that would call for suppression."  Defendant's motion to suppress based on Rule 41 is denied.

**IV.    Other Pretrial Motions**

The government has agreed to comply to defendant's requests in his motion for disclosure of evidence; motion for Santiago statement; request for notice of other crimes, wrongs, or acts; and motion for early return of trial subpoenas.  Accordingly, these motions are denied as moot.

**ORDERED:** Defendant's motion to dismiss [90] is granted. Counts 1 though 10 of the indictment are dismissed. Defendant's motion to suppress [95] is denied. Defendant's motion for disclosure of evidence [91]; motion for <u>Santiago</u> statement [92]; request for notice of other crimes, wrongs, or acts [93]; and motion for early return of trial subpoenas [94] are denied as moot.

ENTER:

*[signature]*
George W. Lindberg
Senior U.S. District Judge

DATED:  March 6, 2009