**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 07 CR 227** |
| | ) | |
| **JOHN P. TOMKINS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In 2013, another judge in this District sentenced John Tomkins to thirty-seven years in prison after a jury convicted him of nine counts of mailing threatening communications, two counts of unlawful possession of destructive devices, and one count of possessing a destructive device in furtherance of a crime of violence. Mr. Tomkins has now filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the Court denies the motion.

### Background

The evidence at trial showed that from 2005 to 2007, Mr. Tomkins mailed a series of threatening letters to various investment firms and their employees. These threats identified the victims' addresses, included photos of their homes, and threatened violence against family members and the kidnapping of their children. The goal of these threats was to pressure investors into buying stocks Mr. Tomkins had invested in.

The written threats failed to achieve Mr. Tomkins's desired results. In response,

he sent two fully functioning pipe bombs to additional victims at investment firms along with threatening letters. The only thing that prevented the pipe bombs from detonating was a purposefully disconnected wire.

Mr. Tomkins was arrested on April 7, 2007. A search of his storage locker revealed two additional pipe bombs (one ready to be mailed), more drafts of threatening letters, bomb-making materials, information concerning prospective targets, and financial records related to stocks mentioned in his threats.

A grand jury indicted Mr. Tomkins in 2009, charging him with ten counts of mailing threatening communications under 18 U.S.C. § 876(b), two counts of unlawful possession of a destructive device under 26 U.S.C. § 5861(d), and one count of possessing a destructive device in furtherance of a crime of violence under 18 U.S.C. § 924(c)(1)(A). The last charge, count thirteen, carried a mandatory minimum sentence of thirty years imprisonment. *See* 18 U.S.C. § 924(c)(1)(B)(ii).

To avoid the mandatory minimum on the section 924(c) charge, Mr. Tomkins attempted to negotiate a plea agreement with the government in which he would plead guilty to all of the other charges if the government agreed to drop count thirteen. The government declined, stating that no matter what plea agreement was reached, it intended to go to trial on count thirteen. The parties failed to reach a plea agreement, and Mr. Tomkins proceeded to trial *pro se*. Following a two-week jury trial, the jury convicted him on every charge except one count of mailing threatening communications.

Mr. Tomkins's sentencing hearing was held in April and May 2013. At the time, a conviction on a charge of possessing a destructive device in furtherance of a crime of

violence under 18 U.S.C. § 924(c)(1)(A) had to be served consecutively to any other term of imprisonment. *See* U.S.S.G. § 2K2.4(b) cmt. n.2 (2012). Further, Seventh Circuit precedent required a sentencing judge to first determine a reasonable sentence on the remaining charges irrespective of any section 924(c) mandatory minimum, then add the mandatory minimum sentence on top of that. *See United States v. Calabrese*, 572 F.3d 362, 370 (7th Cir. 2009).

Judge Robert M. Dow Jr., the sentencing judge, concluded that a reasonable sentence for the convicted crimes—other than the section 924(c) conviction—was seven years. He sentenced Mr. Tomkins to that seven years plus a term of thirty years on the section 924(c) conviction, to run consecutively. Judge Dow noted that the sentencing was "challenging" and that he might have imposed a lesser sentence if he had more discretion: "I might have imposed a shorter sentence in view of the mandatory consecutive sentence, but I must follow the law as it comes to me from Congress and from the Court of Appeals and other higher courts in the federal system." Tr. of Proceeding—Sentencing—Vol. 2 at 26–27, 44.

Mr. Tomkins's direct appeal was unsuccessful. *See United States v. Tomkins*, 782 F.3d 338 (7th Cir. 2015); *Tomkins v. United States*, 577 U.S. 955 (2015) (mem.). Then in 2017, the Supreme Court held in *Dean v. United States*, 581 U.S. 62 (2017), that a sentencing judge could consider the effect of a section 924(c) mandatory minimum when deciding on a reasonable sentence on other charges, overruling Seventh Circuit precedent. Mr. Tomkins moved for postconviction relief under 28 U.S.C. § 2255, arguing, among other things, that *Dean* applied retroactively to his sentence. Judge Dow denied the motion, ruling that *Dean* did not apply retroactively.

*Tomkins v. United States*, No. 16 C 7073, 2018 WL 1911805, at *19–20 (N.D. Ill Apr. 23, 2018).

In July 2022, Mr. Tomkins filed a *pro se* motion for compassionate release.  He argued that there were two extraordinary and compelling circumstances that justified a sentence reduction:  (1) the greater discretion judges now have in sentencing under *Dean*, and (2) the disparity between his sentence and the sentences of those convicted of similar or worse crimes.  Mr. Tomkins later moved to withdraw this motion after realizing that binding Seventh Circuit precedent prevented a district court from considering nonretroactive legal changes as an extraordinary and compelling reason for compassionate release.  *See United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022).  Judge Dow allowed Mr. Tomkins to withdraw the initial motion.

On November 1, 2023, the Sentencing Commission's most recent policy statement amendments took effect.  Mr. Tomkins moved to renew his motion for compassionate release in December 2023, arguing the new policy statement abrogated Seventh Circuit precedent on what could be considered extraordinary and compelling reasons for compassionate release.  The undersigned judge—to whom the case has been reassigned—now considers the renewed compassionate release motion.

## Discussion

A federal prisoner may bring a motion for compassionate release after exhausting the administrative remedies provided by the Bureau of Prisons.  18 U.S.C. § 3582(c)(1)(A).  The government does not dispute that Mr. Tomkins has exhausted these remedies.

The Seventh Circuit has described a two-step process for evaluating a prisoner's

motion for compassionate release.  First, "the prisoner must identify an 'extraordinary and compelling' reason warranting a sentence reduction."  *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021).  Second, "[u]pon a finding that the prisoner has supplied such a reason," a court "consider[s] any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner."  *Id.*

"[T]he movant bears the burden of establishing extraordinary and compelling reasons that warrant a sentence reduction."  *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).  When determining whether a prisoner has raised an extraordinary and compelling reason, a court should consider all the reasons raised "[i]ndividually and collectively."  *United States v. Vaughn*, 62 F.4th 1071, 1073 (7th Cir. 2023).  Even if a reason on its own is "insufficient to meet the threshold," the collective effect of all the reasons raised may amount to an extraordinary and compelling reason.  *Id.*

## A.     Extraordinary and compelling reasons

### 1.     Change in binding precedent

First, Mr. Tomkins argues that the Sentencing Commission's new policy statement allows a district court to consider a nonretroactive change in the law as an extraordinary and compelling reason for compassionate release.  Congress has delegated to the Sentencing Commission the power to "describe what should be considered extraordinary and compelling reasons for sentence reduction."  28 U.S.C. § 994(t).  The only statutory limit Congress imposed on this power is that "[r]ehabilitation of the defendant alone" may not be an extraordinary and compelling reason.  *Id.*

The Sentencing Commission has stated that a nonretroactive change in the law can be an extraordinary and compelling reason "only where such a change would

5

produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances."  U.S.S.G. § 1B1.13(b)(6).  Mr. Tomkins contends that his current sentence is grossly disparate when compared to how he would be sentenced today, as *Dean* now allows a sentencing judge to consider the effect of the lengthy mandatory minimum when determining a reasonable sentence on the remaining charges.  *See Dean*, 581 U.S. at 71.  Mr. Tomkins further argues that a lower sentence would be likely, as the sentencing judge, Judge Dow, noted he "might have imposed a shorter sentence in view of the mandatory consecutive sentence" if allowed to do so. *See* Tr. of Proceeding—Sentencing—Vol. 2 at 44.

But even if Mr. Tomkins would receive a lower sentence today, binding precedent precludes his contention that a disparity created by a nonretroactive change in the law constitutes an extraordinary and compelling reason permitting a sentence reduction under section 3582(c)(1)(A).  Specifically, the Seventh Circuit has held that a nonretroactive change in sentencing law cannot be considered an extraordinary and compelling reason.  *King*, 40 F.4th at 595.  And the court has held that *Dean* is nonretroactive.  *Worman v. Entzel*, 953 F.3d 1004, 1010 (7th Cir. 2020).

This precedent remains binding even in the face of the Sentencing Commission's more recent policy statement.  In *United States v. Black*, 131 F.4th 542 (7th Cir. 2025), the Seventh Circuit considered whether the Sentencing Commission's policy statements could make a nonretroactive change—the First Step Act's anti-stacking amendment regarding 18 U.S.C. § 924(c)—an extraordinary and compelling reason for compassionate release despite past circuit precedent holding otherwise.  *Id.* at 545–46.

6

The court held that its precedent "remain[ed] binding law." *Id.* at 543. It recognized that "Congress explicitly delegated to the Commission authority to interpret extraordinary and compelling" under the compassionate release statute. *Id.* at 546. The court further understood that the Commission's policy statement "directly contradicts [its] holding." *Id.* at 545. Still, the court concluded that its "interpretation of extraordinary and compelling prevails over the Commission's because the Commission exceeded its statutory authority." *Id.* at 546.

Much of the Seventh Circuit's reasoning for why the Commission exceeded its authority is based on Congress's express choice to make the anti-stacking amendment nonretroactive. *See id.* at 546–47. In the court's view, this choice prevented the Commission from having the power to define the anti-stacking amendment as an extraordinary and compelling reason, as that would "make[] the amendment retroactive" and "violate the First Step Act." *Id.* at 546. Because its interpretation "conflict[ed] with a federal statute," the court concluded, the Commission exceeded its interpretative scope, and Seventh Circuit precedent prevailed. *Id.*

Read narrowly, *Black*'s holding may be specific to situations where the Commission conflicts with *Congress's* intent to make a statute nonretroactive. That is not what is at issue here; *Dean* and the decision not to make it applicable retroactively were judicial decisions, not legislative decisions. Yet other parts of *Black* have broader implications. The Seventh Circuit stated that its past interpretations of "extraordinary and compelling" were not "temporary answer[s]" waiting for Commission guidance. *Id.* at 547. Rather, the court said, its precedents "directly interpreted" the compassionate release statute and remain binding: "Our interpretation of extraordinary and compelling

in the governing compassionate release statute . . . is lasting, not temporary." *Id.* at 547–48.

As the Court has indicated, in Mr. Tomkins's case there is no statutory bar on retroactivity that poses a conflict with the Commission's policy statement. Rather, any conflict would be with judicial precedent. But the Court cannot ignore the Seventh Circuit's past interpretations of what constitutes an extraordinary and compelling reason, especially after *Black*.[1] Without a clearer statement otherwise, the Court must abide by the Seventh Circuit's prior holding that nonretroactive changes in the law, statutory or judicial, are not an extraordinary and compelling reason for a sentence reduction.

Because Mr. Tomkins cannot rely on *Dean*—a nonretroactive change in the law—to show his sentence is grossly disparate to the sentence he would have received today, this alleged disparity is not an extraordinary and compelling reason for a sentence reduction.

### 2. Disparity between other sentences

Second, Mr. Tomkins argues that his sentence is disparate when compared to the crimes and sentences of other defendants who were not convicted under section 924(c). There is some debate in this circuit regarding whether disparities in sentencing between similar defendants may be considered an extraordinary and compelling reason

---

[1] Further supporting the application of past Seventh Circuit precedent is the fact that Judge Kenneth Ripple, the deciding vote in *Black*, concurred "in the judgment and opinion of the court" based on "the doctrines of stare decisis and precedent." *Black*, 131 F.4th at 549 (Ripple, J., concurring). *But see United States v. Sanders*, No. 24-2763, 2025 WL 826869, at *2 (7th Cir. Mar. 17, 2025) (per curiam) (concluding it "need not address the effect of *Black*" on defendant's contention that nonretroactive judicial changes in the law are an extraordinary and compelling reason, as the district court did not abuse its discretion in finding the defendant had not shown a gross disparity in sentences).

for a sentence reduction. In *United States v. Arojojoye*, 806 F. App'x 475 (7th Cir. Mar. 20, 2020) (per curiam), the Seventh Circuit appeared to suggest that challenges based on sentencing disparities cannot be asserted as a basis for compassionate release, as they should be construed as challenges to the propriety of a sentence more appropriately asserted via a motion under 28 U.S.C. § 2255:

> [Defendant]'s "compassionate release" motion expressly sought a modification of his prison sentence based on his argument that the disparity between his sentence and his co-defendant's was unwarranted. This is a challenge to the length of the prison sentence that was made on direct appeal and in the first § 2255 motion. And "any post-judgement motion in a criminal proceeding that fits the description of a motion to vacate, set aside, or correct a sentence . . . should be treated as a section 2255 motion."

*Id.* at 478 (quoting *United States v. Carraway*, 478 F.3d 845, 848 (7th Cir. 2007)). Yet courts in this district have split over the impact of *Arojojoye*. *Compare United States v. Veysey*, No. 99 CR 381-1, 2023 WL 2332560, at *2 (N.D. Ill. Mar. 2, 2023) (citing *Arojojoye*, 806 F. App'x at 477) ("Under Seventh Circuit law, sentencing disparities do not qualify as an extraordinary and compelling reason for early release . . . .") *with United States v. Conley*, No. 11 CR 779-6, 2021 WL 825669, at *3 & n.1 (N.D. Ill Mar. 4, 2021) (noting that "several federal courts have considered sentencing disparities" as an extraordinary and compelling reason and interpreting *Arojojoye* as "not reach[ing] the issue of whether a sentence disparity was an extraordinary and compelling reason for compassionate release").

The Court need not choose a side on this split. Even if one assumes that sentencing disparities between defendants may be considered an extraordinary and compelling reason for a sentence reduction under section 3582(c)(1)(A), Mr. Tomkins has not shown a material disparity between other defendants' sentences and his own.

The cases he cites are all distinguishable.

The closest case Mr. Tomkins cites is *United States v. Haddad*, No. 09 CR 115, 2015 WL 161659 (N.D. Ill. Jan. 13, 2015), *aff'd*, 652 F. App'x 460 (7th Cir. June 16, 2016) (per curiam). In *Haddad*, the defendant sent "more than two dozen anonymous packages . . . to various elected officials in Chicago and high-ranking oil executives in Texas and California." *Id.* at *2. The letters in these packages "included extreme language," including death threats to the recipients and their families, in an attempt to lower gas prices. *Id.* at *2–4. These packages also included either "a white powder, a brown granular powder, . . . a plastic bag filled with an oily liquid," or "a live shotgun shell attached to a pyrotechnic popper." *Id.* at *2. The defendant was convicted of several counts of mailing threatening communications and sentenced to twelve-and-a-half years in prison. *See Haddad*, 652 F. App'x at 461.

Although *Haddad* is certainly similar to the present case when it comes to the mailing of threats, Mr. Tomkins went further than the defendant in *Haddad* by also sending two fully functioning pipe bombs. That is the action that subjected Mr. Tomkins to the thirty-year mandatory minimum prison term, which explains the difference between his sentence and the one imposed in *Haddad*. Mr. Tomkins may not believe that his actions warrant such a disparity as he did not physically injure anyone nor intend injury. Yet, as Judge Dow explained, sending functioning pipe bombs endangered people, whether or not the bombs were meant to explode:

> Even if the Defendant is correct that by not hooking up the last wire or by not fully exposing that wire it wasn't likely that the device would explode, the risk was there. And when the consequence[s] are so severe—death or serious injury—nobody in their right mind would ever want to play those odds with the mail clerk or the delivery guy or any other innocent victim, much less the recipient . . . .

10

Tr. of Proceeding—Sentencing—Vol. 2 at 29. Despite the other similarities, sending functioning explosives through the mail is a material difference between Mr. Tomkins's case and *Haddad*, and this explains the disparity in their sentences.

The other cases that Mr. Tomkins cites are even less similar. The defendant in *United States v. Hassoun*, 470 F. Supp. 3d 804 (N.D. Ill. 2020), was granted compassionate release after serving less than ten years of a twenty-three-year sentence despite attempting to detonate a bomb in Wrigleyville with the "intent to kill and injure hundreds of people." *Id.* at 805. But that was because he suffered from a "debilitating hereditary auto-inflammatory disease" that put him at "a high risk of life-threatening complications from COVID-19" during the height of the pandemic, and because he would "be deported to his home country of Lebanon" after his release, preventing him from "be[ing] a danger to the community." *Id.* at 805–06.

Although Mr. Tomkins has undoubtedly suffered from the isolation and stress caused by the COVID-19 pandemic and prison conditions in general, he does not allege anything approaching the debilitating disease suffered by the defendant in *Hassoun* that could qualify as an extraordinary and compelling reason. *Cf.* U.S.S.G. § 1B1.13(b)(1)(C) (noting that "Medical Circumstances of the Defendant" can qualify as an extraordinary and compelling reason if "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"). Nor can Mr. Tomkins argue that the disparity between the initial sentence in *Hassoun* and his justifies a reduction, as Judge Dow already considered and rejected this exact argument during sentencing. *See* Tr. of Proceeding—Sentencing—Vol. 2 at 42 (noting

11

that *Hassoun* "really is distinguishable" as the defendant "agreed to cooperate and waived any appellate rights").

Finally, *United States v. Zajac*, also cited by Mr. Tomkins as a comparable case, involved circumstances significantly different from this case. The defendant placed pipe bombs in an Illinois commuter train station and a Utah public library. *See United States v. Zajac*, No. 6 CR 811 DAK, 2008 WL 1808701, at *1 (D. Utah Apr. 21, 2008); *United States v. Zajac*, No. 10 CR 376, 2020 WL 3050343, at *1 (N.D. Ill. June 8, 2020). He was thus charged in two separate federal cases, one in Illinois and one in Utah, under the federal arson statute, 18 U.S.C. § 844(i), and for using a destructive device in furtherance of a crime of violence under 18 U.S.C. § 924(c)(1)(A), which (as discussed) carries a thirty-year mandatory minimum sentence. *See United States v. Zajac*, No. 20-4123, 2022 WL 263343, at *1 (10th Cir. Jan. 28, 2022); *Zajac*, 2020 WL 3050343, at *1.

But after Zajac's conviction in Utah and before his trial in Illinois, the Supreme Court invalidated one of section 924(c)'s definitions of "crime of violence" as unconstitutionally vague. *See United States v. Davis*, 588 U.S. 445, 470 (2019). This left only one definition of "crime of violence" in section 924(c): an offense must have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Under this definition, the underlying arson charge could not support a conviction under section 924(c), as the federal arson offense criminalizes the destruction of "any building," not just the property of "another" as is now required for a "crime of violence" under section 924(c)(3)(A). *See United States v. Salas*, 889 F.3d 681, 684 (10th Cir. 2018). Therefore, Zajac's section 924(c) conviction was vacated in Utah, and the section 924(c) charge was dropped in

12

Illinois. *Zajac*, 2022 WL 263343, at *1; *Zajac*, 2020 WL 3050343, at *1.

Mr. Tomkins's section 924(c) conviction, by contrast, remains valid. As Judge Dow concluded when evaluating Mr. Tomkins's section 2255 motion, Mr. Tomkins's mailing-threatening-communications conviction under 18 U.S.C. § 876(b) was still a "crime of violence" under section 924(c)(3)(A), as the conviction required threatened use of force against another:

> Because the "threat to injure the person of the addressee or of another" necessarily involves the threat to use force—either directly or indirectly— to cause injury to the person, a conviction under the "threat to injure" prong of § 876(b) constitutes a "crime of violence."

*Tomkins*, 2018 WL 1911805, at *10. Moreover, despite the defendant in *Zajac* having his section 924(c) charges vacated and dropped, he still was given consecutive sentences of twenty-one-and-a-half years and twenty years (the second by the undersigned judge), for a total sentence of forty-one-and-a-half years. That is four and one-half years *longer* than Mr. Tomkins's thirty-seven-year sentence.

In sum, the Court finds that the claimed disparity between the sentences imposed upon Mr. Tomkins and other defendants does not amount to an extraordinary and compelling reason that warrants a sentence reduction under section 3582(c)(1)(A).

## B. Other reasons

Mr. Tomkins lists only "change[s] in binding precedent" and "disparity in sentencing" as extraordinary and compelling reasons for a sentence reduction. Def's Mot. for a Sentence Reduction at 3–5. His briefs, however, could be construed as including more arguments for why his circumstances are extraordinary and compelling. In accordance with a court's responsibility to construe *pro se* filings liberally, the Court considers these other reasons as well. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

13

(emphasis omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) ("A document filed *pro se* is 'to be liberally construed' . . . .").

### 1.    Validity of sentence

Mr. Tomkins contends that "intervening change[s] in the law" call into doubt his conviction under section 924(c) and that it is "questionable" whether Congress intended his conduct to fall under section 924(c).  Def.'s Reply at 9.  These are challenges to the validity of his sentence that are not appropriately brought as part of a compassionate release motion—"a legal contest to a sentence must be resolved by direct appeal or motion under § 2255, not by seeking compassionate release."  *United States v. Von Vader*, 58 F.4th 369, 371 (7th Cir. 2023).  Mr. Tomkins's claims regarding the validity of his sentence thus cannot serve as an extraordinary and compelling reason for a sentence reduction.

### 2.    Harsh conditions

Next, Mr. Tomkins notes that the COVID-19 pandemic and his transfer to another prison has created "unforeseen harsh conditions."  Def.'s Reply at 16–18.  The Seventh Circuit has concluded, however, that harsh prison conditions do not qualify as an extraordinary and compelling reason authorizing compassionate release, stating that the proper vehicle to bring such claims is "a suit under the Eighth Amendment."  *United States v. Hanson*, No. 23-3088, 2024 WL 5134348, at *1 (7th Cir. Dec. 17, 2024) (per curiam) (citing *United States v. Bridgewater*, 995 F.3d 591, 599 (7th Cir. 2021)).

### 3.    Rehabilitation

Lastly, Mr. Tomkins argues he is fully rehabilitated and that his risk of recidivism is low.  The record in fact reflects that Mr. Tomkins has made great strides in improving

his mental health through therapy and medication.  He has also performed well as a machinist in prison and has shared his vocational skills with other inmates.  It is clear Mr. Tomkins takes these actions because he believes in them, as his section 924(c) conviction makes him ineligible from earning any good-time credits that could reduce his sentence.  *See* 18 U.S.C. § 3632(d)(4)(D)(xxii).

All of this will benefit Mr. Tomkins, and the community, once he is released.  But under the law, rehabilitation alone does not amount to an extraordinary and compelling reason that permits a sentence reduction.  28 U.S.C. § 994(t).  The Court may consider rehabilitation but cannot grant a compassionate release motion unless this factor is coupled with some other extraordinary reason.  *United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022); *see also* U.S.S.G. § 1B1.13(d).  Mr. Tomkins rehabilitative efforts "cannot serve as a stand-alone reason" for a sentence reduction.  *Peoples*, 41 F.4th at 842 (quoting *United States v. Hunter*, 12 F.4th 555, 563 (6th Cir. 2021)).

## C.    Totality of reasons

Finally, the Court considers whether the grounds raised—although individually insufficient—constitute an extraordinary and compelling reason when considered together.  *See Vaughn*, 62 F.4th at 1073.  The Court finds that they do not.  Many of Mr. Tomkins's grounds are not just insufficient individually—they are not extraordinary and compelling reasons at all.  The only bases that might be considered extraordinary and compelling are the alleged sentencing disparities between Mr. Tomkins and other defendants and his rehabilitation.  But as discussed above, Mr. Tomkins has not shown a material sentencing disparity between him and other defendants, and rehabilitation alone cannot suffice.  *Peoples*, 41 F.4th at 842.  In sum, Mr. Tomkins has not provided

15

extraordinary and compelling reasons, even in conjunction, that warrant a sentence reduction.

## Conclusion

For these reasons, the Court denies Mr. Tomkins's motion for compassionate release [dkt. 509, 519].  His request for appointment of counsel is respectfully denied. The Clerk is directed to mail a copy of this order to:  John Tomkins; FCI Thomson; PO Box 1002; Thomson, IL 61285.

Date:  April 8, 2025

_____
MATTHEW F. KENNELLY
United States District Judge